


**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 08-20953-CR-Seitz(s)**
**18 U.S.C. § 1349**
**18 U.S.C. § 1343**
**18 U.S.C. § 2**

**UNITED STATES OF AMERICA**

**vs.**

**ROBERT NICOL,**

**Defendant.**
_______________________________/

## SUPERSEDING INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At various times relevant to this Superseding Indictment:

1. Table Top Vending, Inc. ("Table Top Vending"), was a Utah corporation with a principal place of business in the Salt Lake City, Utah, area. Table Top Vending was incorporated in or around July 1997 and did business through in or around May 2005, when it closed and its successor, Gold Star Vending, Inc., began doing business.

2. Gold Star Vending, Inc. ("Gold Star Vending"), was a Utah corporation with its principal place of business at 7302 S. 300 W., Suite 302, Midvale, Utah, 84047. Gold Star Vending began doing business in or around May 2005 and continued to do business through in or around July 2007. As described below, Gold Star Vending co-conspirators did business in both Utah and the

Southern District of Florida. Although it operated under a different name and address, Gold Star Vending followed a nearly identical *modus operandi* as Table Top Vending.

3. Defendant **ROBERT NICOL** was an owner, operator, and salesman for both Gold Star Vending and Table Top Vending.

**COUNT 1**
**Conspiracy to Commit Wire Fraud**
**(18 U.S.C. § 1349)**

1. Paragraphs 1 through 3 of the General Allegations section of this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. From at least as early as April 2003 through in or around July 2007, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**ROBERT NICOL,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate and agree with others, known and unknown to the Grand Jury, to commit an offense against the United States, that is, to knowingly and with intent to defraud devise, and intend to devise, a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and to transmit and cause to be transmitted certain wire communications in interstate commerce, for the purpose of executing the scheme, in violation of Title 18, United States Code, Section 1343.

**PURPOSE OF THE CONSPIRACY**

3. It was the purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by obtaining money from potential business opportunity purchasers

by making materially false representations, and omitting to state and concealing material facts concerning, among other things, expected profits, the authenticity of Table Top Vending and Gold Star Vending references, and the services Table Top Vending and Gold Star Vending and outside locating firms provided to purchasers.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4. **ROBERT NICOL** and his co-conspirators advertised Table Top Vending and, later, Gold Star Vending business opportunities across the country. Advertisements were placed in classified sections of newspapers and mass mailings, and on the Internet. At times during the conspiracy, classified ads stated in part:

> You can make up to $250 per hour in vending.
> Exciting new concept, no competition.
> Best locations available. Call for free info package.
> 1-800-300-8785

5. Upon calling a toll-free number, callers were placed in touch with salespeople, including **ROBERT NICOL. NICOL** and his co-conspirators offered callers a business opportunity that included table top units called table top shooters and on-going customer assistance. The opportunity sold for a minimum purchase price of approximately $8,000.

6. **ROBERT NICOL** and his co-conspirators sent a brochure to potential business opportunity purchasers. The brochure contained, among other things, a letter, which explained the concept of the table top shooters:

> Imagine for a minute that you're in a busy restaurant. You're sitting there waiting for your order and you see a cute little game on the table. It's holding the salt, pepper, and sugar, and the sign say's [sic] "Make your shot and win your meal!" That's right, for a quarter, you win your lunch, dinner, or other prize!

According to **ROBERT NICOL** and his co-conspirators, business opportunity purchasers purportedly collected the quarters patrons fed into the machines, thereby earning a large profit.

7. The letter, which was the same in both the Table Top Vending and the Gold Star Vending brochures, further stated, "I have been in vending for over ten years as an owner/operator. This is without a doubt the most exciting machine I have ever seen." It further stated: "Take a look at this information and see how easy it is to make your dream of financial freedom come true!"

8. Other parts of the brochures contained similar statements, falsely claiming: "In becoming part of our umbrella corporation you have over 35 years of vending experience backing up your business."

9. The brochures also made false statements about the companies that purportedly would find high profit locations for the table top shooters. The Table Top Vending brochure stated: "We screen all the locating companies and only work with the best. We also continually monitor their results to insure that they meet with our high standards for business." The Gold Star Vending brochure falsely stated: "We continually monitor our customer's [sic] results to insure that our high standards for business are being met." It further falsely stated: "The location companies we work with have already researched your area and there are lots of locations available."

10. The Table Top Vending and Gold Star Vending brochures contained many false claims about the profits purchasers would make. For example, Table Top Vending's brochure stated: "We can show you a plan that has the realistic potential of making you over $100,000 per

year in the vending business in a very short time. With a start up cost of less than $10,000. The only question is how soon do you want to start and are you willing to have some patience and follow this plan." The Gold Star Vending brochure contained the same false claim, but referred to a "start up cost of less than $15,000."

11. The Table Top Vending and Gold Star Vending brochures walked the potential purchaser through a scenario of making money from 60 machines and continuously reinvesting the profits over the course of a year. The calculation ended with the purchaser making over $100,000 per year. The brochures stated: "This is a very realistic plan that is attainable if you stick to it."

12. The Table Top Vending and Gold Star Vending brochures also included a flyer purporting to contain testimonials excerpted from customer letters. One purported customer, who claimed to have purchased 300 machines, falsely boasted that "my average net per day per machine is $2.80, and so far that is just small mom and pop restaurants. My worst machine is in a pet store and has made $14 net in exactly 2 weeks." The flyer quoted other purported customer letters with similar stories. The Table Top Vending and Gold Star Vending brochures each contained an identical flyer, including the same purported customer quotes, except that references to "Table Top Vending" changed to "Gold Star Vending" when the company changed names.

13. In interstate telephone calls, Table Top Vending and Gold Star Vending salespeople made an extended sales pitch to potential purchasers, including W.M., J.D., S.H., D.T., and T.G. **ROBERT NICOL** and other salespeople made a number of false representations about the business opportunity, earnings projections, and the help and support he and his co-conspirators provided. **NICOL** and co-conspirator salespeople falsely told potential purchasers that a location company in

the Southern District of Florida would supply purchasers with high profit locations in which to place their machines.

14. **ROBERT NICOL** and other salespeople placed potential purchasers in touch with references. In interstate telephone calls, references in Utah, the Southern District of Florida, and elsewhere falsely told potential purchasers that they were successful business opportunity owners.

15. **ROBERT NICOL** and other salespeople then finalized the purchasers' investments. Purchasers sent their payments to **NICOL** and his co-conspirators by interstate credit card transactions, bank wire transfers, and other means.

16. **ROBERT NICOL** and his co-conspirators also sold business opportunities through seminars. **NICOL**'s co-conspirators placed ads for the seminars in classified sections of newspapers. In interstate telephone calls, individuals who responded to the advertisements were told to meet for a seminar at a hotel in the caller's geographic area. The seminar included a speech on the benefits of owning a table top shooter business opportunity. **NICOL** and his co-conspirators made individual sales pitches to potential purchasers. In doing so, **NICOL** made a number of the same false claims discussed above in an effort to finalize sales.

17. **ROBERT NICOL** and his co-conspirators used a number of techniques to prevent potential purchasers and government entities from detecting their fraud. These techniques included changing the name of the firm under which they operated, using aliases, and making it appear that co-conspirator references were located in places, including Canada, where they, in fact, were not. To further avoid detection, **NICOL** and his co-conspirators, after a search warrant was executed on their telemarketing offices in February 2007, focused their sales efforts on seminars, as described in Paragraph 15 above.

18. To fraudulently induce others to purchase business opportunities, **ROBERT NICOL** and his co-conspirators made, and caused others to make, materially false statements, and the defendant and his co-conspirators concealed and omitted to state, and caused others to conceal and omit to state, material facts, including, among others, the following:

**Materially False Statements**

a. That Table Top Vending and Gold Star Vending business opportunities were highly profitable for purchasers when, in truth and in fact, **ROBERT NICOL** and his co-conspirators were the only individuals who profited from their activities;

b. That "locators" would secure highly profitable locations for purchasers to place their table top shooters in the purchasers' respective local areas, when, in truth and in fact, locators rarely if ever secured highly profitable locations;

c. That Gold Star Vending purchasers could feel secure with their purchases because VISA required that Gold Star Vending post a bond in order to accept credit card transactions when, in truth and in fact, this was not the case;

d. That references had purchased table top shooter business opportunities from Table Top Vending and Gold Star Vending when, in truth and in fact, the references had not done so;

e. That references owned highly profitable business opportunities when, in truth and in fact, references did not own such highly profitable opportunities;

**Omissions and Concealments of Material Facts**

f. That one of the purportedly successful business opportunity owners whom **ROBERT NICOL** encouraged potential purchasers to contact as a reference was a close relative of **NICOL's** son;

g. That certain Gold Star Vending references used aliases when speaking with potential Gold Star Vending purchasers;

h. That calls placed to a toll free number for Gold Star Vending reference "Mike Williams," who purportedly resided in Canada, were routed to the home telephone of a co-conspirator in the Salt Lake City area, approximately ten miles from Gold Star Vending's office location; and

i. That the Gold Star Vending reference who used the alias "Mike Williams" had previously served as a reference for Table Top Vending;

All in violation of Title 18, United States Code, Sections 1349.

**COUNTS 2 - 5**
**Wire Fraud**
**(18 U.S.C. §§ 1343 and 2)**

1. Paragraphs 1 through 3 of the General Allegations section of this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. From at least as early as April 2003 through in or around July 2007, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**ROBERT NICOL,**

did knowingly and with intent to defraud devise, and intend to devise, a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses,

representations, and promises, knowing that they were false and fraudulent when made, and for the purpose of executing such scheme and artifice to defraud, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate commerce, certain signals and sounds.

**PURPOSE OF THE SCHEME AND ARTIFICE**

3. It was the purpose of the scheme and artifice for the defendant and his accomplices to unlawfully enrich themselves by obtaining money from potential business opportunity purchasers by making materially false representations, and omitting to state and concealing material facts concerning, among other things, expected profits, the authenticity of Table Top Vending and Gold Star Vending references, and the services Table Top Vending and Gold Star Vending and outside locating firms provided to purchasers.

**MANNER AND MEANS OF THE SCHEME AND ARTIFICE**

4. Paragraphs 4 through 18 of the Manner and Means section of Count 1 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

**USE OF THE WIRES**

5. On or about the dates listed as to each count below, the defendant, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted, by means of wire communications in interstate commerce, certain signals and sounds, as set forth below:

| COUNT | APPROX. DATE | DESCRIPTION OF WIRE TRANSMISSION |
|---|---|---|
| 2 | October 2006 | Telephone call between J.D. in Pennsylvania and a co-conspirator in the Southern District of Florida |
| 3 | November 2006 | Telephone call between S.H. in California and a co-conspirator in the Southern District of Florida |
| 4 | January 2007 | Telephone call between D.T. in Texas and a co-conspirator in the Southern District of Florida |
| 5 | January 2007 | Telephone call between T.G. in Georgia and a co-conspirator in the Southern District of Florida |

All in violation of Title 18, United States Code, Sections 1343 and 2.

A TRUE BILL

FOREPERSON

WIFREDO A. FERRER
UNITED STATES ATTORNEY

PHILIP M. TOOMAJIAN
RICHARD N. GOLDBERG
TRIAL ATTORNEYS
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

ROBERT NICOL,

Defendant.
_______________________________/

CASE NO. 08-20953-CR-SEITZ(s)

# CERTIFICATE OF TRIAL ATTORNEY*

Superseding Case Information:

**Court Division:** (Select One)

X Miami ___ Key West
___ FTL ___ WPB ___ FTP

New Defendant(s) Yes ___ No X
Number of New Defendants ___
Total number of counts 6

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No) No
List language and/or dialect ___

4. This case will take 12 days for the parties to try.

5. Please check appropriate category and type of offense listed below:

(Check only one) (Check only one)

| | | | | |
|---|---|---|---|---|
| I | 0 to 5 days | ___ | Petty | ___ |
| II | 6 to 10 days | ___ | Minor | ___ |
| III | 11 to 20 days | X | Misdem. | ___ |
| IV | 21 to 60 days | ___ | Felony | X |
| V | 61 days and over | ___ | | |

6. Has this case been previously filed in this District Court? (Yes or No) Yes
If yes:
Judge: Seitz Case No. 08-20953-CR
(Attach copy of dispositive order)
Has a complaint been filed in this matter? (Yes or No) No
If yes:
Magistrate Case No. ___
Related Miscellaneous numbers: ___
Defendant(s) in federal custody as of ___
Defendant(s) in state custody as of ___
Rule 20 from the ___ District of ___

Is this a potential death penalty case? (Yes or No) No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? ___ Yes X No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? ___ Yes X No

[signature]
For RICHARD N. GOLDBERG
DOJ TRIAL ATTORNEY
Court No. A5500676

*Penalty Sheet(s) attached

REV 4/8/08

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name:** ROBERT NICOL **Case No:** 08-20953-CR-SEITZ(s)

Count #: 1

18 U.S.C. § 1349

Conspiracy to Commit Wire Fraud

***Max Penalty**: 20 years' imprisonment

Counts #: 2 - 6

18 U.S.C. § 1343

Wire Fraud

***Max Penalty**: 20 years' imprisonment per count

Count #:

***Max Penalty:**

Count #:

***Max Penalty:**

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**